UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Cr. No. 24cr10336 |
| | ) | |
| v. | ) | Violation: |
| | ) | |
| ELVIS TRUJILLO, | ) | Count One: |
| a/k/a "GORDO," a/k/a "HONDURAS," | ) | Conspiracy to Conduct Enterprise |
| | ) | Affairs Through a Pattern of |
| Defendant. | ) | Racketeering Activity |
| | ) | (18 U.S.C. § 1962(d)) |
| | ) | |
| | ) | RICO Forfeiture Allegation: |
| | ) | (18 U.S.C. § 1963(a)) |

INDICTMENT

COUNT ONE
Conspiracy to Conduct Enterprise Affairs Through a Pattern of Racketeering Activity
(18 U.S.C. § 1962(d))

The Grand Jury charges:

At all times relevant to this Indictment:

The Enterprise

1. The Trinitarios (hereinafter, the "TRINITARIOS") was a criminal organization composed primarily of immigrants or descendants of immigrants from the Dominican Republic, with members operating throughout Massachusetts, New Hampshire and Maine, including Lawrence, Lynn, Worcester, Boston, and Haverhill, and various correctional facilities. The TRINITARIOS was one of the largest criminal organizations in the United States, and was a national and international criminal organization with thousands of members, whose leaders, members and associates engaged in acts involving murder, robbery, assault, extortion, witness harassment, intimidation, and retaliation, various firearms offenses, laundering of monetary instruments, and the manufacture, importation, and distribution of controlled substances, and which

operated in the District of Massachusetts, and elsewhere.

2. The TRINITARIOS was established in 1993 on Rikers Island, the New York City jail. The Enterprise was named for three revolutionaries of the Dominican War of Independence; its slogan was "Dios, patria y libertad" (the official motto of the Dominican Republic, "God, homeland and liberty"). The colors of the TRINITARIOS were lime green, as well as red, blue, and white, which are the colors of the Dominican Republic flag. The preferred weapon of the TRINITARIOS was the machete. The traditional power center of the TRINITARIOS was New York; however, the highest level of the gang's active leadership structure were predominantly located in the Dominican Republic.

3. The TRINITARIOS had a defined organizational structure, which can vary by state. Each state was known to have an identified leader responsible for organizing the TRINITARIOS in that particular state. In Massachusetts, there was a "Supreme," who was the head of all the TRINITARIOS within Massachusetts and was responsible for coordination with other state leaders and the overall leadership within the Dominican Republic.

4. Within each state, and in Massachusetts particularly, the TRINITARIOS were organized into smaller groups referred to as "Chapters". In Massachusetts, there were multiple Chapters, and the Chapters were generally named after the town or city where the Chapter was located. Some of the Chapters identified within Massachusetts included Lawrence, Lynn, Worcester, Boston, and Haverhill. Similarly, groups of TRINITARIOS who were incarcerated in correctional facilities were organized into Chapters based on where they were detained.

5. Each Chapter within Massachusetts had leadership positions of "first," "second," "third," and "secretary". These leadership positions, collectively referred to as "The Cabinet",

were responsible for administration and operations of the TRINITARIOS within their respective Chapter. These leadership positions were responsible for recruiting new members, providing discipline to members in violation of TRINITARIOS directives, and collecting money into a pot called a "Fundo," which was used to support illegal operations and provide money for incarcerated TRINITARIOS members and their families. This money was generated through the sale of illegal narcotics and firearms, as well as robberies, and other racketeering activity.

6. To become a member of the TRINITARIOS, a member would be "blessed" into the gang by another TRINITARIO who was either a leader or a senior member. TRINITARIOS members used colors, flags, tattoos, and hand signals to demonstrate their membership in the gang both on and off the street, as well as on social media. TRINITARIOS members also would "flash" Trinitarios hand signs, with their thumb, index finger, and middle finger extended in recognition of the three principals of "God, homeland and liberty." TRINITARIOS members also obtained tattoos depicting symbols and numbers that are significant to the group, such as "157," which was symbolic to the first, fifth, and seventh tenets of their "Magna Carta", thought to be the three most important tenets, and the flag of the Dominican Republic. TRINITARIOS members also wore and used symbolic beaded necklaces bearing the colors of the TRINITARIOS, which signified leadership, membership or significant accomplishments of the gang member.

7. TRINITARIOS Chapters may have had different individual leaders, chains of command, and areas of operation, but all TRINITARIOS Chapters shared the same structure and certain core operating principles, such as the need to attack rivals, and those who cooperate with law enforcement against the gang. TRINITARIOS Chapters worked both independently and

cooperatively to engage in criminal activity on behalf of the TRINITARIOS enterprise and to assist one another in avoiding detection by law enforcement.

8.  The TRINITARIOS had long standing feuds, or "beef," with rival gangs. These feuds typically involved rival groups engaging in violent conflicts, driven by territorial disputes, vendettas, drug trade, and power struggles. The origins of the feuds often traced back to historical tensions, criminal activities, or perceived disrespect amongst the gangs taking place on the street or, more frequently, through social media. Manifestation of these feuds came in many forms, from rap videos in which rival gangs insult one another, to assaults, robberies, shootings, and murders. The TRINITARIOS in Massachusetts received "green lights" from the leadership of the Chapter or State Supreme to conduct acts of violence, to include homicide against rival gang members, and others targeted for violence by the gang. Once a "green light" was given, TRINITARIOS members did not need to obtain specific permission before initiating the act against rivals but must report it afterwards. This "green light" order against a particular individual or rival gang would stand until it was revoked by leadership.

9.  The Defendant, ELVIS TRUJILLO, was a member of the TRINITARIOS.,

10. The TRINITARIOS, including its leadership, membership and associates, constituted an "enterprise" as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact. The enterprise constituted an ongoing organization whose members functioned as a continuing unit with a common purpose of achieving the objectives of the enterprise. The enterprise was engaged in, and its activities affected, interstate and foreign commerce.

### Purposes of the Enterprise

11. The purposes of the TRINITARIOS Enterprise included the following:

   a. Promoting and enhancing the prestige, reputation, and position of the enterprise with respect to rival criminal organizations;

   b. Enriching the leaders, members, and associates of the enterprise through, among other things, the illegal manufacturing, distribution and trafficking of controlled substances;

   c. Preserving and protecting the power, territory, and criminal ventures of the enterprise through the use of intimidation, threats of violence, and acts of violence, including murder, attempted murder, and assault;

   d. Creating a climate of fear among victims, potential victims, and community members;

   e. Confronting and retaliating against rival gangs through the use of violence, threats of violence, and intimidation;

   f. Hindering and obstructing efforts of law enforcement to identify, apprehend, and successfully prosecute offending Trinitarios members; and

   g. Ensuring discipline within the enterprise and compliance with the enterprise's rules by members and associates through threats of violence and acts of violence.

### Means and Methods of the Enterprise

12. Among the means and methods by which the Defendant, ELVIS TRUJILLO, and his co-conspirators conducted and participated in the conduct of the affairs of the TRINITARIOS Enterprise were the following:

a. Leaders, members, and associates of TRINITARIOS used the TRINITARIOS Enterprise to commit, attempt to commit, and threaten to commit acts of violence, including murder, attempted murder, and assault, to enhance the enterprise's prestige and protect and expand the TRINITARIOS Enterprise's criminal operations;

b. Leaders, members, and associates of TRINITARIOS used the TRINITARIOS Enterprise to promote a climate of fear through violence and threats of violence in order to intimidate and control potential rivals, and in order to intimidate and silence potential witnesses; and

c. Leaders, members, and associates of TRINITARIOS followed certain core rules and operating principles and sought to ensure compliance with these rules and principles by other members of the enterprise, including the core operating principles that: (i) members of the enterprise not act as informants for law enforcement authorities; and (ii) members of the enterprise attempt to kill members of rival gangs, when authorized by leadership.

d. All TRINITARIOS were expected to commit acts of violence to maintain membership and discipline within the gang, including violence against rival gang members (or those perceived to be rival gang members), as well as members and associates of the TRINITARIOS who violated the gang's rules.

e. TRINITARIOS leaders, and ranking members had the authority within the gang to order other subordinate members to complete tasks or assignments that would serve a purpose for the TRINITARIOS. These tasks included ordering a "green light", meaning the shooting and murder of a rival gang member or other individual targeted by

the TRINITARIOS.

f.  Typically, more serious tasks, such as the decision to approve a retaliatory shooting, fell within the discretion of the Chapter Leaders or State Supreme. Decisions on matters of less significance - such as granting membership, purchasing firearms, physical assaults and beatings, robberies, or providing drugs for sale - would generally fall to the Chapter's Cabinet.

## The Racketeering Conspiracy

13.  Beginning on a date unknown to the Grand Jury, but from at least 2016, and continuing until on or about April 2024, at Boston, Haverhill, Lawrence, Lynn, Malden, Middleton, Peabody, Salem, and elsewhere in the District of Massachusetts, and at other places presently known and unknown, the Defendant,

ELVIS TRUJILLO, a/k/a "GORDO," a/k/a "HONDURAS,"

and others known and unknown to the Grand Jury, being persons employed by and associated with the TRINITARIOS, an enterprise which was engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the TRINITARIOS enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and (5).

14.  The pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), through which ELVIS TRUJILLO, and others known and unknown to the Grand Jury, agreed to conduct and participate in the conduct of the affairs of the TRINITARIOS Enterprise, consisted of:

      a.      multiple acts involving murder, chargeable under Massachusetts General Laws, Chapter 265, Section 1 (murder), Section 15 (assault with intent to murder), and Section 18 (armed assault with intent to murder), and Massachusetts General Laws, Chapter 274, Section 2 (aiding and abetting and accessory before the fact to a felony), Section 3 (counseling or procuring of a felony), Section 6 (attempt to commit a crime), Section 7 (conspiracy to commit a crime), and Section 8 (solicitation of a felony);

      b.      multiple acts involving robbery, chargeable under Massachusetts General Laws, Chapter 265, Section 17 (armed robbery), Section 18 (armed assault with intent to rob), Section 19 (unarmed robbery), Section 20 (unarmed assault with intent to rob) and Massachusetts General Laws, Chapter 274, Section 2 (aiding and abetting of a felony and accessory before the fact to a felony), Section 3 (counseling or procuring of a felony), Section 6 (attempt to commit a crime), Section 7 (conspiracy to commit to commit a crime); and Section 8 (solicitation of a felony);

      c.      multiple acts involving kidnapping, chargeable under Massachusetts General Laws, Chapter 265, Section 26 (kidnapping) and Massachusetts General Laws, Chapter 274, Section 2 (aiding and abetting of a felony and accessory before the fact to a felony), Section 3 (counseling or procuring of a felony), Section 6 (attempt to commit a crime), Section 7 (conspiracy to commit to commit a crime); and Section 8 (solicitation of a felony);

      d.      multiple acts indictable under 18 U.S.C. § 1512 (relating to tampering with a witness, victim, or an informant);

      e.      multiple acts indictable under 18 U.S.C. § 1513 (relating to retaliation against a witness, victim, or an informant);

      f.      multiple acts indictable under 18 U.S.C. § 1951 (relating to interference with commerce, robbery, or extortion);

      g.      multiple acts indictable under 18 U.S.C. §§ 2314 and 2315 (relating to interstate transportation of stolen property); and

      h.      multiple offenses involving the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance, including cocaine, cocaine-base, fentanyl, methamphetamine, heroin and marijuana, as well as conspiracy to commit the offenses, in violation of 21 U.S.C. §§ 841, 843, and 846.

15. It was part of the conspiracy that the Defendant, ELVIS TRUJILLO, agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the TRINITARIOS Enterprise.

Notice of Special Sentencing Factors

16. On or about March 8, 2017, in Lawrence, Massachusetts, in the District of Massachusetts and elsewhere, the defendant, ELVIS TRUJILLO, and others known and unknown to the Grand Jury, with deliberately premeditated malice aforethought, murdered Juan Espinal, and aided and abetted the same, in violation of Massachusetts General Laws, Chapter 265, Sections 1 and 2, and Chapter 274, Sections 2 and 3.

17. On or about November 26, 2017, in Lawrence, Massachusetts, in the District of Massachusetts, and elsewhere, the defendant, ELVIS TRUJILLO, and others known and unknown to the Grand Jury, murdered Mindy Tran during the commission or attempted commission of a crime punishable by imprisonment for life under the laws of Massachusetts, and aided and abetted the same, in violation of Massachusetts General Laws, Chapter 265, Sections 1 and 2, and Chapter

274, Sections 2 and 3.

All in violation of Title 18, United States Code, Section 1962(d).

## RICO FORFEITURE ALLEGATION
(18 U.S.C. § 1963(a))

18. Upon conviction of the offense in violation of Title 18, United States Code, Section 1962, set forth in Count One, the Defendant,

ELVIS TRUJILLO, a/k/a "GORDO," a/k/a "HONDURAS,"

shall forfeit to the United States pursuant to Title 18, United States Code, Section 1963:

   a. any interest acquired or maintained in violation of Title 18, United States Code, Section 1962;

   b. any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise established, operated, controlled, conducted, or participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and

   c. any property constituting, or derived from, any proceeds obtained, directly and indirectly, from racketeering activity in violation of Title 18, United States Code, Section 1962.

19. If any of the property described in Paragraph 18, above, as being forfeitable pursuant to Title 18, United States Code, Section 1963(a), as a result of any act or omission of the defendant—

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 18 above.

All pursuant to Title 18, United States Code, Section 1963.

A TRUE BILL

_____
FOREPERSON


*Philip A. Mallard*
PHILIP A. MALLARD
ASSISTANT UNITED STATES ATTORNEY


District of Massachusetts: October 31, 2024

Returned into the District Court by the Grand Jurors and filed.

　　　　　　　　　　　　　　　　　　/s/Thomas F. Quinn  10/31/24 @ 1:52pm
　　　　　　　　　　　　　　　　　　DEPUTY CLERK